IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No 13-cv-03420-RBJ-BNB

WESLEY BERNARD WILLIAMS,

Plaintiff,

v.

DAVID ALLRED (Doctor),

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant's Motion to Dismiss for Failure to State a Claim** [Doc. #21, filed 03/17/2014] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d

1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is incarcerated by the Bureau of Prisons ("BOP") at the United States Penitentiary in Florence, Colorado ("USP Florence"). He filed his Prisoner Complaint on December 18, 2013 [Doc. #1] (the "Complaint"). The Complaint contains the following allegations:

1. On July 20, 2009, the plaintiff was seen by a medical provider for dandruff at USP Big Sandy. He was prescribed Selenium Sulfide lotion to apply to his scalp once daily for fifteen days. *Complaint*, p. 3[1] and Doc. #1, pp. 73-74.[2]

2. On August 25, 2009, the plaintiff was seen by a registered nurse in the medical department of Lexington FCC. He complained that the Selenium Sulfide lotion was not helping and that his scalp was itching and bleeding. He was referred to a mid-level practitioner for further evaluation. Id. at p. 3 and Doc. #1, pp. 75-76.

3. On August 31, 2009, the plaintiff was seen again by the registered nurse with a subjective complaint that "I have been complaining for two weeks that my scalp is very dry,

---

[1]The Complaint is not consecutively paginated. Therefore, I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

[2]Written documents attached to a complaint are exhibits and are considered part of the complaint for consideration in a Rule 12(b)(6) dismissal. Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991); Fed.R.Civ.P. 10(c). The plaintiff attaches over 100 pages of exhibits to his Complaint. Many of the exhibits are redundant, and the labeling of the exhibits is confusing at best. Therefore, when citing to the plaintiff's exhibits, I use the docket number and page number assigned to the exhibits by the court's docketing system.

itchy, with bumps in it that bleed. The medicated shampoo I had didn't work." He was assessed with a 2-3 inch "extremely dry patch of skin" at the crown of his head where his hair had fallen out. His scalp was dry and flaky with raised areas. He was again referred to a mid-level practitioner for further evaluation. Id. at p. 3 and Doc. #1, pp. 76-77.

    4. On September 1, 2009, the plaintiff was seen by a physician's assistant for his scalp condition. He complained that he had been on the Selenium Sulfide lotion for "1 month" with no relief. His scalp had a three centimeter area of "tender dry papules, located at hair follicles." There was no drainage or pain. He was diagnosed with folliculitis of the posterior scalp and prescribed a steroid solution to apply to his scalp twice daily. He was told to return in two weeks if his condition did not improve. Id. at p. 3 and Doc. #1, pp. 78-79.

    5. On December 2, 2010, the plaintiff was seen by a physician's assistant at USP Pollock for complaints of a "chronic scalp condition that seems to go away with medication but comes right back." He was assessed to have a "dry, flaky scalp consistent with dandruff and seborrheic dermatitis." He was prescribed Selenium Sulfide lotion. Id. at p. 4 and Doc. #1, pp. 80-81.

    6. On June 30, 2011, the plaintiff was seen by a nurse practitioner at USP Pollock for the same complaint. He was assessed with dry, flaky skin lesions and dandruff. He was prescribed with an oral steroid, a topical steroid cream, and Ketoconazole shampoo 2%. The Ketoconazole kept the bumps, bleeding, and itching in control. Id. at p. 4 and Doc. #1, pp. 70-71.

    7. The plaintiff was transferred to USP Florence in August 2012. Id. at p. 3, ¶ 4.

8. In October 2012, the plaintiff filed a grievance because he was not receiving a prescription refill for his shampoo from Dr. Allred. Id. at p. 5, ¶ 5. On November 2, 2012, the Warden responded to the grievance:

> A review of the issue raised in your Request for Administrative Remedy has been conducted. The result of the review reveals you arrived at USP Florence with a prescription for Ketoconazole shampoo 2% 120 ML, which expired shortly after you arrived. It does not appear your concern was documented or mentioned during the intake screening. You were not evaluated by medical for a complaint, and there are no written records you requested the prescription to be refilled. Once we were notified (in writing) of his [sic] request for prescription shampoo, it was provided to you shortly thereafter on October 12, 2012. You are encouraged to notify staff of medical concerns following the established procedures for SMU sick call.

Id. at Doc. #1, p. 38.

9. On December 6, 2012, the plaintiff submitted a request to refill the shampoo prescription. Dr. Allred denied the request, stating that the plaintiff was to "follow up on sick-call for next prescription." The prescription did not expire until December 11, 2012. Id. at p. 5, ¶ 6 and Doc. #1, p. 39.

10. On December 17, 2012, the plaintiff filed a grievance complaining that he was having difficulty refilling his prescription. On January 15, 2013, the Warden responded to the grievance:

> A review of the issue raised in your Request for Administrative Remedy has been conducted. The result of the review reveals the staff physician reviewed your electronic medical file and determined you have not been evaluated for your complaint since June 2011. Because there is a limited description of your condition, and because the prescription you are requesting is non-formulary the staff physician has indicated you will need to be examined. Therefore, you have been placed on the schedule to be examined by the staff physician.

Id. at p. 5, ¶ 6 and Doc. #1, p. 34.

11. The plaintiff obtained his medical files and found "overwhelming information" about his scalp condition. Id. at p. 6, ¶ 7.

12. The plaintiff was seen by Nurse Kellar on January 25, 2013. Nurse Kellar noted that the plaintiff had "crusts," no tenderness, no drainage, and no lesions. Kellar noted "very dry scalp with flaking skin. No scabs or bleeding noted." Kellar prescribed Selenium Sulfide lotion 1% to be applied to the scalp twice a day. " Kellar recommended "[f]ollow-up at Sick Call as Needed." Id. at p. 6, ¶ 8 and Doc. #1-1, pp. 21-22.

13. Dr. Allred completed a BOP Health Services Clinical Encounter dated February 14, 2013. He stated that the plaintiff complained of "scalp itching, flaking, scaling, bleeding" and that he sought renewal of the Ketoconazole. Dr. Allred stated that the plaintiff was examined in his cell and had "[l]ong dred locks, but a general view of the scalp was obtained with assistance of flashlight. No scalp lesions were noted by two examiners. No dandruff, flaking, scaling, excoriations, blood, lesions, bumps." Dr. Allred noted that he found "no pathology for which to intervene. Ketoconazole is not indicated, and will not be renewed." Dr. Allred wrote that the plaintiff should return to the medical department if his condition worsened. Id. at p. 6, ¶ 8 and Doc. #1-1, p. 24.

14. Dr. Allred "fabricated" the statements in the February 14, 2013, encounter form. Id. at p. 6, ¶ 8.

The plaintiff asserts three claims for relief. Claim One alleges that, in violation of the plaintiff's First and Eighth Amendment rights, Dr. Allred was deliberately indifferent to the plaintiff's serious medical needs when he failed to provide the Ketoconazole. Id. at p. 7. Claim

Two alleges that Dr. Allred violated the plaintiff's First and Eighth Amendment rights by ignoring the plaintiff's serious condition after Nurse Kellar prescribed a prescription shampoo. Id. at p. 9. Claim Three alleges that Dr. Allred violated the plaintiff's First and Eighth Amendment rights by "interfering with the plaintiff's access to prescribed treatment for chronic scalp condition through means of retaliatory treatment and requests to defendant's superiors about defendant's acts." Id. at p. 10.[3] The plaintiff seeks compensatory damages in the amount of $112,604.00 and punitive damages in the amount of $225, 208.00. Id. at p. 15.

### III. ANALYSIS

Dr. Allred asserts that he is entitled to qualified immunity. *Motion*, p. 4. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the

---

[3] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[4]

### A. Claims One and Two

Claims One and Two allege that Dr. Allred was deliberately indifferent to the plaintiff's serious medical needs in violation of the First and Eighth Amendments. Deliberate indifference to medical needs is protected by the Eighth Amendment, not the First Amendment. Therefore, I analyze Claims One and Two solely under the Eighth Amendment.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted). A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05.

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999)

---

[4]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

7

(quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).  A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health."  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

The defendant argues that the plaintiff's medical condition is not sufficiently serious to meet Eighth Amendment standards.  *Motion*, p. 8.  In support of that argument, the defendant cites Anderson v. Less, No. 13-cv-1630, 2014 WL 136250, *3 (N.D. Ohio Jan. 14, 2014).  In Anderson, the court found that the inmate plaintiff did not have a sufficiently serious medical condition because his complaints were all maladies treated with over-the-counter products.  Here, the plaintiff's condition was diagnosed as one necessitating treatment with prescription shampoos and prescription steroids.  The plaintiff alleges that without the Ketoconazole, he had to endure on a daily basis bumps on his scalp that were bleeding, itching, and painful.  *Complaint*, p. 7.  The plaintiff has alleged a sufficiently serious medical condition.

However, the Complaint does not contain any allegations which demonstrate that Dr. Allred was deliberately indifferent to the plaintiff's serious medical condition.  To the contrary, rather than showing deliberate indifference, the record shows that the plaintiff's complaints were addressed repeatedly.  In October 2012, the plaintiff was provided with Ketoconazole shortly after requesting a prescription refill in writing; in December 2012, Dr. Allred denied the plaintiff's request for another Ketoconazole refill until he could examine the plaintiff; the plaintiff was seen by a registered nurse on January 25, 2013, who noted that the plaintiff had a very dry scalp with flaking skin and "crusts," but no tenderness, drainage, lesions, scabs, or bleeding; the nurse prescribed Selenium Sulfide lotion; the plaintiff was seen by Dr. Allred on

February 14, 2013; and Dr. Allred did not renew the Ketoconazole because he did not find any lesions, dandruff, flaking, scaling, excoriations, blood, lesions, or bumps. Although it is clear that the plaintiff disagrees with Dr. Allred's opinion regarding his need for Ketaconazole, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).

The plaintiff makes conclusory allegations that Dr. Allred "fabricated" statements in the February 14, 2013, encounter form. *Complaint* pp. 6, 11, and Doc. 1-1, p. 15. The plaintiff's conclusory allegations of fabrication are not plausible and are insufficient to hold Dr. Allred liable for violating his constitutional rights.

The plaintiff also argues that Dr. Allred could have refilled his prescription without first examining him because there was "overwhelming information" about his scalp condition in his medical files. Contrary to the plaintiff's assertion, the medical records show that--prior to being seen by Nurse Kellar at USP Florence--the plaintiff was seen six times over a period of 3½ years for his scalp condition. When the plaintiff requested a refill of his Ketoconazole shampoo in December 2012, Dr. Allred declined to refill the prescription without first examining the plaintiff. The plaintiff had not been examined for his scalp condition for approximately 1½ years. Rather than exhibiting deliberate indifference, the record reflects that Dr. Allred made a reasonable decision to examine the plaintiff's condition prior to refilling a prescription that had initially been written at another institution 1½ years prior.

The plaintiff has not alleged any facts to show that Dr. Allred was deliberately indifferent to a serious medical need. Claims One and Two should be dismissed for failure to state a claim

upon which relief can be granted, and Dr. Allred is entitled to qualified immunity on those claims.

## B. Claim Three

In Claim Three, the plaintiff alleges that Dr. Allred withheld the Ketoconazole in retaliation for filing grievances. The First Amendment protects the right to free speech and the right to petition the government for redress of grievances. U.S. Const. Amend. I. The plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The defendants argue that the plaintiff lacks a Bivens remedy for a First Amendment claim. *Motion*, pp. 10-11.

In Bivens, the Supreme Court permitted an action for damages for a violation of the Fourth Amendment. Since then, the Court has recognized a Bivens remedy for violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, Carlson v. Green, 446 U.S. 14 (1980), and violations of the Fifth Amendment's Equal Protection Clause. Davis v. Passman, 442 U.S. 228 (1979). Correctional Services Corp. v. Malesko, 534 U.S. 61, 67 (2001). "Since Carlson [the Court has] consistently refused to extend Bivens liability to any new context or new category of defendants." Id. at 68. In addition, the Court has expressed reluctance to extend Bivens to claims for monetary damages based on an alleged First Amendment violation. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (noting that the Court has "declined to extend Bivens to a claim sounding in the First Amendment"); Bush v. Lucas, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation under Bivens).

The Court has stated that a Bivens remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a Bivens remedy unjustified." Robbins v. Wilkie, 551 U.S. 537, 550 (2007). A Bivens remedy should not be created where there exists any alternative existing process for protecting the constitutional interest. Id. "But even in the absence of an alternative, a Bivens remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." Id. (internal quotations and citation omitted).

Here, the plaintiff has other means to protect his constitutional rights. A federal prisoner may seek injunctive relief against BOP officials and submit grievances through the BOP's administrative remedy program, Malesko, 534 U.S. at 7, or pursue a remedy under the mandamus statute, 28 U.S.C. 1361. Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233-34 (10th Cir. 2005). Based on the Supreme Court's reluctance to recognize new Bivens remedies and the availability of alternative means to seek relief for his alleged constitutional violations, I recommend that the court decline to create a Bivens remedy for the plaintiff's third claim. The unavailability of a Bivens remedy notwithstanding, the plaintiff may seek declaratory and injunctive relief based on the alleged violation of the First Amendment. See Malesko, 534 U.S. at 74; Simmat, 413 F.3d at 1231-33; Williams v. Klien, Civil Action No. 12-cv-01580-REB-BNB, --- F.Supp.2d ---, 2014 WL 716982 at *3 (D.Colo. February 24, 2014).

Even if a Bivens remedy existed for Claim Three, the Complaint does not contain any specific factual allegations from which a reasonable inference may be drawn that Dr. Allred

knew of the plaintiff's grievances when he declined to refill the plaintiff's Ketoconazole prescription on February 14, 2013.  Claim Three should be dismissed.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendant's Motion to Dismiss for Failure to State a Claim [Doc. #21] be GRANTED.[5]

Dated October 22, 2014.

                                                  BY THE COURT:

                                                  s/ Boyd N. Boland
                                                  United States Magistrate Judge

---

[5] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).